IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| **BBD PSYCHIATRY GROUP,** **PROFESSIONAL LIMITED LIABILITY COMPANY**, <br>1015 15th Street NW, #600, <br>Washington DC 20005 <br><br>    Plaintiff, <br><br>v. <br><br>**REGUS MANAGEMENT GROUP, LLC**, <br>15305 Dallas Parkway, Suite 1100 <br>Addison, TX 75001 <br><br>    Defendant. | Civil Action No. 25-cv-3836 |

**COMPLAINT FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION IN AID OF ARBITRATION**

This Complaint seeks a temporary restraining order and preliminary injunction against Regus Management Group, LLC, dba International Workplace Group ("Regus" or "Defendant"), who seeks to unlawfully evict Plaintiff BBD Psychiatry Group, Professional Limited Liability Company ("BBD" or "Plaintiff"), from its premises in connection with a retaliatory non-renewal of its Renewal Service Agreements dated October 28, 2024 (collectively, "Agreements"). Plaintiff has suffered and will suffer irreparable financial injury and substantial damages in the event it is required to immediately relocate from Defendant's premises. Plaintiff files this Complaint, in part, to mitigate such damages.

On October 30, 2025, Plaintiff has filed a demand for arbitration with the American Arbitration Association alleging that Defendant violated the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq., and breached the Agreements based on

1

the implied covenant of good faith and fair dealing. Plaintiff requests an Order to maintain the status quo and prevent Defendant from unlawfully evicting Plaintiff pending the outcome of arbitration. Without an Order from this Court, Plaintiff will be irreparably harmed.

## PARTIES

1. Organized in January 2021, Plaintiff is a District of Columbia professional limited liability company, Initial File Number L00006823290, with its principal located on the 5th Floor at 1015 15th Street NW, Washington DC 20005 ("Premises"). BBD provides psychiatric medical services to patients in the District of Columbia and operates under the professional supervision of a licensed psychiatrist.

2. Defendant is a Texas limited liability company with its principal place of business at 15305 Dallas Parkway, Suite 1100, Addison, TX 75001. Defendant is licensed to transact business as a foreign entity in the District of Columbia, Initial File Number L21559. Defendant provides office space, virtual office services, and business support services on a commercial basis. Defendant operates multiple locations throughout the District of Columbia, including the location where Plaintiff maintains its psychiatric practice.

## JURISDICTION AND VENUE

3. This Court's jurisdiction arises under 28 U.S.C. § 1331, the Federal Arbitration Act, 9 U.S.C. et seq. ("FAA"), and the Agreements.

4. The Agreements, attached collectively hereto as **Exhibit A** and incorporated by reference, contains the following arbitration clause:

> "AGREEMENT TO ARBITRATE/CLASS ACTION WAIVER: YOU AND WE MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLVE DISPUTES IN A COURT OF LAW BY AJUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BETWEEN US BY BINDING ARBITRATION, except as expressly provided in this paragraph. Any dispute or claim relating in anyway or arising out of this Agreement shall be resolved by binding arbitration administered by the

>American Arbitration Association in accord with its Commercial Arbitration Rules (available at www.adr.org), except that You or We may assert claims in small claims court and We may pursue a court action to remove You if You do not leave when this Agreement terminates (and **You may pursue a court action to prevent Your removal**). The arbitrator, and not a court of law, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this agreement to arbitrate, and shall conduct the arbitration on an individual basis only and not as a class or representative action. **You and We acknowledge that this Agreement is governed by the Federal Arbitration Act and will survive after this Agreement terminates or your relationship with Us ends**." (emphasis added)

5. The Court has personal jurisdiction over Defendant as, *inter alia*, Defendant is licensed to transact business as a foreign entity in the District of Columbia.

6. Venue is appropriate in this Court pursuant to the arbitration clause above and that the Premises identified in the Agreements and herein is located within the District of Columbia.

## THE ARBITRATION

7. On October 30, 2025, Plaintiff filed a demand for arbitration with the American Arbitration Association, naming Defendant as respondent. The arbitration complaint includes multiple claims under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 et seq. ("CPPA"), and a claim for breach of contract. In the arbitration, Plaintiff seeks, *inter alia*, an injunction enjoining from Defendant unlawfully terminating the Agreements, which contains an automatic renewal provision except in the event of [lawful] termination, and evicting Plaintiff from the Premises, as well as damages and other relief.

8. It is likely to take several months, or at least several weeks, before the arbitration can address issues of an injunction to prevent unlawful non-renewal and eviction. The arbitration begins with a process of selecting an arbitrator, and that process alone may take several weeks. Thereafter, the arbitrator(s) may require discovery and other proceedings before proceeding to a hearing. Plaintiff seek temporary and preliminary relief from this Court to maintain the status quo until such time as the arbitration can address the underlying claims. Plaintiff will continue to

make timely rental payments to Defendant during such period.

9. The arbitration complaint's allegations of violation of the CPPA are summarized below:

    a. BBD asserts multiple violations of the CPPA based on Regus's allegedly retaliatory non-renewal of its Agreements. Specifically, BBD alleges that Regus misrepresented the reasons for non-renewal (§ 28-3904(e)) by concealing its retaliatory intent, falsely presenting the action as a routine business decision when it was in fact prompted by BBD's lawful refusal to pay a baseless and unlawful penalty, which Regus has since expressly retracted. BBD also claims that Regus misrepresented the characteristics and terms of the Agreements (§ 28-3904(f))—namely, the promise of "seamless continuity of services"—by weaponizing the non-renewal provision to punish BBD for asserting its legal rights. This retaliatory action, according to BBD, transformed what was represented as a stable business relationship into one subject to arbitrary and bad-faith termination.

    b. Further CPPA violations include Regus's failure to state a material fact (§ 28-3904(f-1))—specifically, its omission of the retaliatory motive behind the non-renewal—and its misrepresentation regarding the provision of services as promised (§ 28-3904(e-1)), since the promised continuity was denied solely due to BBD's challenge to an improper penalty demand.

    c. Additionally, BBD claims that Regus demanded payment of $20,104.50 for a breach it knew to be false, and that it continued to retaliate even after withdrawing the demand, thereby violating the prohibition on unjustified payment demands (§ 28-3904(m)).

    d. Lastly, BBD alleges that Regus's conduct—false accusation, coercive penalty

  demand, and retaliatory non-renewal—was so egregious and one-sided that it amounted to an unconscionable practice under § 28-3905(k)(1)(A), justifying both injunctive relief and treble damages.

10. The arbitration complaint's allegations of breach of contract are summarized below:

    a. BBD alleges that Regus breached the express and implied terms of the Agreements by terminating the Agreements in bad faith and in retaliation for BBD's lawful refusal to pay a penalty it did not owe. Although the Agreements contain an automatic renewal provision with a right of non-renewal, BBD contends that Regus's exercise of that discretion was not based on legitimate business reasons, but was instead driven by animus toward BBD after it challenged a baseless $20,104.50 penalty demand. BBD asserts that this retaliatory use of the non-renewal clause violated the covenant of good faith and fair dealing implied in all contracts under D.C. law, which prohibits a party from exercising contractual discretion in a manner that destroys the other party's benefit of the bargain.

    b. BBD further alleges that Regus's actions breached specific provisions of the Agreements themselves, including those guaranteeing "seamless continuity of services" through automatic renewal, absent cause for termination. By forcing BBD to vacate without legitimate justification, Regus deprived BBD of the stable and ongoing business environment it contracted for, undermining the purpose and commercial expectation of the Agreements. BBD seeks damages for lost goodwill, disruption of its medical practice, and harm to patient continuity—injuries flowing directly from Regus's breach. In sum, the complaint argues that

Regus's conduct violated both the express and implied terms of the contract, entitling BBD to compensatory damages and other relief under D.C. contract law.

11. Since January 4, 2021, Plaintiff has maintained its practice at the Premises (with a prior landlord) and currently under the operative Agreements at the Premises with Regus, relying on the Premises and associated services to sustain daily operations, patient communications, and business continuity.

12. On or about October 28, 2024, Plaintiff and Defendant entered into three separate but substantively identical Agreements, each governing a distinct office suite located at the Premises.

13. The Agreements at issue is an agreement between Defendant and Plaintiff that provided Plaintiff with office space, virtual office services, and business support services for its psychiatric medical practice. The Agreements contained an automatic renewal provision emphasizing "seamless continuity of services" as a core benefit of the relationship. This arrangement worked as planned until April 2025, when Defendant falsely accused Plaintiff of violating the Agreements' non-solicitation provision by allegedly hiring a former Defendant employee, Ava Webb ("Ms. Webb"), and demanded $20,104.50 in penalty fees.

14. Plaintiff never hired Ms. Webb. She is not even qualified to work for Plaintiff as she lacks the requisite credentials. Moreover, the penalty clause Defendant sought to enforce constitutes an illegal penalty under District of Columbia law. When Plaintiff's counsel disputed both the factual basis and legal enforceability of Defendant's demand, Defendant formally withdrew the charge on April 17, 2025—implicitly admitting the accusation lacked merit.

15. Then, mere hours thereafter, Defendant issued a notice of non-renewal, effectively terminating the parties' relationship and requiring Plaintiff to vacate its office space within thirty (30) days. Despite Defendant's withdrawal of its baseless accusation, and despite Plaintiff being

6

a paying tenant in good standing with no history of breach or misconduct, Defendant boldly proceeded to terminate the relationship anyway.

16. The Agreements permit either party to provide thirty (30) days' notice to terminate renewal, meaning that Defendant could have waited until September 2025 to issue a lawful notice. However, Defendant instead delivered a non-renewal more than six (6) months in advance—and precisely hours after it withdrew its baseless penalty demand. The timing and context make the retaliatory motive unmistakable: Defendant is punishing Plaintiff for exercising its legal rights.

17. Plaintiff reasonably and materially relied upon the Agreements' automatic renewal provision and the express assurance of "seamless continuity of services" in selecting Defendant's facility as the location to establish and expand its psychiatric practice. At present, prevailing market rates for comparable medical office space render relocation financially impracticable, further underscoring Plaintiff's reliance on the continued availability of the Premises.

18. Injunctive relief is necessary and appropriate to prevent Defendant from compounding its misconduct by proceeding with the eviction—which would violate the CPPA and breach the implied covenant of good faith and fair dealing. Given the tremendous investment Plaintiff has made in building its psychiatric practice at this location, and the reliance of Plaintiff's patients on continuity of care, Defendant's action would have a devastating impact.

19. Not only would Plaintiff be deprived of its established business location and the goodwill associated with that location, it would also face: disruption of ongoing patient care relationships (particularly harmful in psychiatric practice where stability is critical); loss of licensing and credentialing tied to the current address; substantial relocation costs; and the chaos of an involuntary thirty-day move that would likely result in the loss of patient relationships cultivated

over months or years.

20. This loss of an established medical practice location, coupled with the disruption to vulnerable patients' mental health care, is a quintessential form of irreparable injury. So is the destruction of professional goodwill and patient relationships that cannot be adequately remedied by monetary damages. The balance of equities of the requested injunction plainly favors Plaintiff, given that it poses no real threat of injury to Defendant (Plaintiff is a paying tenant performing all obligations), but rather requires only that Defendant honor its contractual obligation to act in good faith. Likewise, by protecting continuity of mental health care for vulnerable patients and by enforcing fundamental principles of fair dealing, the injunction would also advance the public interest.

21. For these reasons, Plaintiff requests that the Court preliminarily enjoin Defendant from terminating the Agreements or forcing Plaintiff to vacate the Premises pending final adjudication of this matter through arbitration.

## **TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

22. Plaintiff seeks a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to enjoin Defendant from evicting Plaintiff from its medical office space at 1015 15th Street NW, Washington, D.C. 20005, during the pendency of this action. Absent injunctive relief, Plaintiff will be irreparably harmed by the loss of its established treatment location, resulting in disruption to patient care, damage to its medical practice, and the potential unraveling of critical regulatory, licensing, and credentialing relationships.

23. The federal courts in the District of Columbia apply a four-part test when considering requests for preliminary injunctive relief: (1) whether the plaintiff is likely to succeed on the

merits; (2) whether the plaintiff will suffer irreparable harm in the absence of relief; (3) whether the balance of equities tips in the plaintiff's favor; and (4) whether the public interest supports an injunction. *League of Women Voters of the United States v. Newby,* 426 U.S. App. D.C. 67, 72, 838 F.3d 1, 6 (2016).

24. Plaintiff satisfies each of these criteria. First, BBD is likely to succeed on the merits of its claims under the CPPA and for breach of the implied covenant of good faith and fair dealing. As detailed herein, Regus initially made a baseless accusation that BBD violated a non-solicitation clause. When BBD challenged that demand as unenforceable under D.C. law, Regus withdrew the $20,104.50 invoice, yet immediately issued a notice of non-renewal. That retaliatory sequence of events supports CPPA violations under D.C. Code §§ 28-3904(e), (f), (f-1), (e-1), and (m), as well as a violation of the Agreements' express and implied terms.

25. The CPPA prohibits unfair trade practices, including misrepresentations about the reasons for service termination, failure to disclose material facts, and retaliation through unjustified demands for payment. See *Pearson v. Chung,* 961 A.2d 1067, 1075 (D.C. 2008) (courts apply common sense and evaluate practices from the perspective of a reasonable consumer); D.C. Code § 28-3904(e), (f), (f-1), (m). Here, the only reasonable inference from Regus's conduct is that it sought to punish BBD for refusing to submit to an improper penalty— an act that falls squarely within the CPPA's scope.

26. BBD has also asserted a viable breach of contract claim, including breach of the covenant of good faith and fair dealing. While the Agreements give Regus the technical right to decline renewal, that discretion must be exercised honestly and in good faith. *See e.g., Wright v. Howard Univ.,* 60 A.3d 749, 754 (D.C. 2013) (recognizing cause of action for breach of implied covenant). Regus's use of the non-renewal clause to retaliate against a lawful challenge to an

unenforceable penalty defeats the central purpose of the Agreements' promise of "seamless continuity of services."

27. Second, BBD will suffer irreparable harm absent injunctive relief. Displacement from its long-standing psychiatric practice site on thirty days' notice would not only disrupt patient care but cause lasting injury to patient relationships, continuity of care, and regulatory compliance. These harms are not compensable by monetary damages. As the D.C. Circuit has made clear, irreparable harm is harm that is certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent it. *Chaplaincy of Full Gospel Churches v. England,* 372 U.S. App. D.C. 94, 101, 454 F.3d 290, 297 (2006).

28. The harms at issue here are particularly acute in the context of psychiatric treatment, which depends on consistency, privacy, and predictability. Regus's abrupt eviction will destabilize care, burden vulnerable patients, and create reputational and logistical chaos. The need for continuity in mental health treatment makes this situation uniquely suited for emergency injunctive relief.

29. Third, the balance of equities clearly favors BBD. Regus stands to suffer no cognizable harm from continuing the parties' existing Agreements on a month-to-month basis. BBD is a paying client in good standing with no record of default or misconduct. Regus's only asserted justification for the non-renewal is retaliation—an illegitimate and inequitable motive that cannot weigh against equitable relief. In contrast, BBD faces displacement, economic loss, and disruption of healthcare services.

30. The D.C. Circuit has emphasized that injunctions are especially appropriate where the defendant's conduct threatens to alter the status quo while legal claims are pending. See *Stand Up for Cal.! v. United States DOI,* 919 F. Supp. 2d 51, 61 (D.D.C. 2013) ("The purpose of a

preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). That principle applies fully here.

31. Fourth, the public interest supports injunctive relief. Preventing retaliatory business practices serves the goals of the CPPA and deters landlords from using market power to coerce unlawful payments. Moreover, protecting uninterrupted access to mental health care in the District of Columbia—particularly during a period of ongoing strain on behavioral health services—is a matter of substantial public concern. See *Winter v. NRDC, Inc.,* 555 U.S. 7, 9, 129 S. Ct. 365, 367 (2008) (courts "must give particular regard to the public consequences").

32. A temporary restraining order is also necessary to prevent irreparable harm before a hearing can be held. The notice of non-renewal threatens to terminate BBD's occupancy imminently. Emergency relief is warranted to preserve the status quo and avoid a *fait accompli* before an arbitrator has the opportunity to hear and weigh the evidence.

33. Accordingly, Plaintiff respectfully requests that this Court issue a temporary restraining order and schedule a prompt hearing on Plaintiff's motion for preliminary injunction to enjoin Regus from terminating Plaintiff's tenancy or taking any action to force BBD to vacate the premises during the pendency of the arbitration.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Enter a temporary restraining order and preliminary injunction prohibiting Defendant, directly or indirectly, from terminating the Agreements or forcing Plaintiff to vacate the Premises; and

b. Enter such other injunctive and other relief as the Court deems just and proper to preserve the status quo until the underlying claims can be resolved in arbitration.

Date: October 31, 2025                                              Respectfully Submitted,

                                                                Robert Powers, Esq. (DC Bar No. 1003476)
                                                                MCCLANAHAN POWERS, PLLC
                                                                 3160 Fairview Park Drive, Suite 410
                                                                 Falls Church, VA 22042
                                                                 Telephone: (703) 520-1326
                                                                 Facsimile:  (703) 828-0205
                                                                 Email: rpowers@mcplegal.com
                                                                            ldavis@mcplegal.com
                                                                *Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

      I hereby certify that the forgoing COMPLAINT with referenced EXHIBIT, if any, is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the District of Columbia. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to a credit card concurrently with this filing.

Date: October 31, 2025,                                   By: _____
                                                                            Robert Powers, Esq.
                                                                            *Counsel for Plaintiff*